## H. N. ELLS, Respondent, *vs.* PACIFIC RAILROAD, Appellant.

1. *Practice, civil—Pleading—Replication—Négative pregnant.*—In suit for dam-
ages against a railroad company for killing stock, the answer of the road set
up a contract on the part of plaintiff to erect a fence along the road, charging
that by reason of his failure to.fence, the stock got upon the road. Plaintiff,
in his replication, denied that he was bound by any contract with the company
to build a fence on his own land on the line of the said road, as stated by de-
fendant, and denied, "that plaintiff's stock came on said road by reason of
plaintiff not building a fence that he was bound to build by reason of any con-
tract that he had made." *Held*, that under our liberal practice, such a denial
being collaterally set up in the pleadings, was sufficient to require defendant to
produce the contract on the trial, so that its terms could be construed by the
court.
2. *Damages—Railroads—Stock getting on track by trespass on adjoining lands.—*
*Semble,* that when stock of a third party trespass upon the land of a pro-
prietor, adjoining a railroad, and go from thence upon the road and are killed,
the company will not be liable for damages.

The following diagram represents the localities described
by the court.

| A | R. R. track. | F | Gate. |
|---|---|---|---|
| B | R. R. lands. | G | Public street. |
| C | Private alley. | H | Ells' lands. |
| D | Sandrock's house. | I | Sandrock's lands. |
| E | Bars. | K | Unenclosed lands |

Ells v. Pacific R. R.

*Appeal from Cooper Circuit Court.*

*Hayden & Tompkins,* for Respondent.

*J. N. Litton,* for Appellant.

I. Strangers and trespassers on lands have inferior rights to land owners when their stock are killed. (Mayberry vs. Concord R. R., 47 N. H., 391; Cornwall vs. Sullivan R. R. Co., 8 Foster, 161; Ham vs. A. & St. Lawrence R. R., 35 N. H., 163; Chapin vs. Sullivan R. R. Co., 39 N. H., 53 and 564; Woolson vs. Northern R. R., 19 N. H., 267; Jackson vs. Rutland R. R. Co., 25 Vt., 150; Morse vs. Rutland R. R. Co., 27 Vt., 49; Picketts vs. East Ind. Docks R. R. Co., 12 C. B., 160; Eames vs. Salem R. R. Co., 98 Mass., 560; Perkins vs. Eastern R. R. Co., 29 Maine., 307; Hurd vs. R. & B. R. R., 25 Vt., 116; Brooks vs. N. Y. & Erie R. R., 13 Barb., 596; Talmadge vs. R. & S. R. R. Co., 13 Barb., 493; 33 Cal., 230; Aylesworth vs. Hennington, 17 Mich., 417.)

II. Meeting an allegation of fact by a statement of a conclusion of law, admits the fact alleged. (See Soeding vs. Bartlett, 35 Mo., 90.)

Vories, Judge, delivered the opinion of the court.

This action was brought by the plaintiff in the year 1870, to recover damages from the defendant, under the 5th section of the statute of this State, concerning "damages and contributions in actions of tort" (Wagn. Stat., 520), for killing horses and mules of the plaintiff on the railroad of the defendant, on a portion of the said railroad, where the same was not fenced and where there was no crossing of a public highway.

The defendant, by its answer, after denying the material allegations of the petition, sets up the following new matter as a defense to the action: That on the 10th day of February, 1868, the Osage Valley and Southern Kansas Railroad Company leased to defendant that portion of their road extending from Tipton, in Moniteau county, to Boonville, Cooper county, all in the State of Missouri, with all the rights, privileges

and appurtenances to said Osage Valley and Southern Kansas Railroad Company belonging or in anywise appertaining. Defendant further says, that the Osage Valley and Southern Kansas Railroad Company, by their Chief Engineer, P. M. Gustravus, entered into an agreement with the plaintiff herein, whereby the said plaintiff, for a valuable consideration in said contract mentioned, agreed to build 1,500 feet of picket fencing on his land and along the line of said railroad in said county of Cooper aforesaid, said fencing to be a good and lawful fence. And said railroad company by their chief engineer, agreed to pay and did pay plaintiff the sum of three hundred and sixty-four dollars, with which to build said fence; but plaintiff wholly disregarding his obligations and duties under said agreement, failed and refused and neglected to build said fence as he had agreed to do.

"Defendant further says, that by reason of said failure and neglect on the part of said plaintiff to build said fence as he had agreed to do, said railroad track adjoining said land that he had agreed to fence, and whereon said stock was roaming, and from which it escaped upon the railroad track, remained unfenced by plaintiff, and in the condition it was at said time. And said stock came upon the track by reason of plaintiff's failure to build the fence at a point where he contracted to fence. And for further answer, defendant says, that, notwithstanding plaintiff had contracted and failed to build said fence, said Osage Valley and Southern Kansas Railroad did, at its own expense, build a good and lawful fence along said road, where said stock came upon said road, and that the same was a private farm crossing. The answer of the defendant then proceeds to state the following matter by way of further defense: "This space said Osage Valley and Southern Kansas Railroad desired to fence up with a permanent and immovable fence and was engaged in doing so when the owner of said land demanded, that instead of a fence, the said railroad should fill a space of seven or eight feet with bars that he could remove, so as to enable said owner to pass across said railroad to his land on the other side of said rail-

road, and said Osage Valley and Southern Kansas Railroad did put in said fence a private farm crossing, and closed the same with good and sufficient bars, sufficient to turn stock, but shortly before the accident, the owner of said land did remove said bars, and erected at the other end of the private lane that terminated at said private farm crossing on the railroad, a good and sufficient gate, and when said gate was closed, stock could not get upon said railroad, and said railroad was closed with a lawful and sufficient fence, but on the morning of the accident, plaintiff's stock roaming upon the public streets in the City of Boonville, escaped therefrom through said gate, which had accidentally been left open by strangers, upon the private enclosed premises of one Sandrock, the owner of said land, and running through said premises, down said private lane, escaped through the place from which said owner, Sandrock, had removed said bars, on to the railroad track. Said stock were trespassers, and said plaintiff was guilty of gross negligence, in not removing said stock from said track, after he knew they were there and the train was coming. Wherefore," &c.

The plaintiff filed his motion to strike out all of this latter defense, set forth in this last part of said answer, because the facts therein stated constituted no defense to the action and were frivolous and irrelevant. This motion was sustained by the court and defendant excepted. The plaintiff then filed a replication to the remaining affirmative part of the answer, in which he states that: "He denies he was bound by any contract with the Osage Valley and Southern Kansas Railroad, to build a fence on his own land and on the line of said railroad track, as stated by defendant in his said answer, and denies that plaintiff's stock came on said railroad track by reason of plaintiff not building a fence that he was bound to build by reason of any contract that he had made."

The plaintiff then denies that defendant had built a good and lawful fence on said road, and states, that at the time said stock came on said road there was no lawful fence on said road, and prays judgment, &c.

The defendant moved the court for judgment on the repli-

cation, because the allegations setting forth a contract to fence the land, in the answer, are not denied specifically in the manner required by law. This motion was overruled by the court and the defendant excepted.

The case was tried by a jury. The plaintiff introduced evidence tending to prove that the mules and horses were killed and injured on the 7th day of July, 1869, within the limits of the City of Boonville, but at a portion thereof not laid out into streets or town lots; that there was a fence on the east side of the railroad track; that there was a street or passage-way on the north or north-west side of the roads which had been opened by the owners of the land for their use and convenience, and which extended from a north direction southward, and ran between the land of plaintiffs and one Sandrock, and approached the railroad in a southward direction to within some fifty yards of the road; that plaintiff lived on the west side of this private street and some distance north of the railroad, and that Sandrock resided on the east side of this private way, and his house was near the railroad and only a short distance east of this street, but as the street did not extend south to the railroad lands, Sandrock had no convenient outlet from his house to the street. He, therefore, opened and fenced an alley from the south end of said street to the railroad land, continuing with the east line of said street to the railroad land, along which the railroad was constructed. After this alley reached the railroad lands it turned directly east, forming an angle and extending along the north edge of the railroad to his house, a distance of about fifty yards. This alley was fenced on the east and north sides by Sandrock and on the west by the plaintiff and on that part of the alley running east, it was fenced by the railroad on the south side next the road. The east end of the alley, near Sandrock's house was closed by bars being erected across the same. These bars had afterwards been removed and a gate erected by Sandrock at the north end of the alley, where it intersected the end of the street in the direction of plaintiff's house. The gate at the north end of the alley had been left opened by some one,

and plaintiff's stock entered the same from the said street and followed along said alley to the east end thereof, where it opened out on the open land adjoining the railroad near Sandrock's house, and from thence passed on to the railroad and were killed and injured.   It was also proved, that plaintiff also owned the land where Sandrock resides, where the road was located, and subsequently sold the same to Sandrock, and this street spoken of was left between the land sold and that retained for the convenience of the proprietors.   The plaintiff also read in evidence the contract referred to in defendant's answer, by which it was averred in the answer, that plaintiff agreed to fence the railroad.   By this contract or agreement, the plaintiff agrees with the Osage Valley and Southern Kansas Railroad Company to build fifteen hundred feet of fencing on his land in accordance with an agreement entered into on the ——, whereby said H. N. Ells, relinquished to said Osage Valley and Southern Kansas Railroad Company the right of way for said road through his land, the fencing to be a picket fence, &c.

The agreement further points out the manner that the fence shall be paid for, its description, &c.   The plaintiff then read in evidence the agreement referred to in the agreement already read, the points of which tend to explain the other contract are as follows :  That in consideration that the said railroad company shall locate the route of the said railroad through the land belonging to said H. N. Ells, lying and being within the limits of the City of Boonvile, lying in the county of Cooper in the State of Missouri, the said H. N. Ells does hereby covenant and agree with the said railroad company, that upon the permanent location of the route of said railroad through the said land, he will relinquish to said railroad company the right of way for said road through said land, as the same may be hereafter surveyed  *  *  *  *  *.   It is also further agreed between the parties aforesaid, that the said railroad company shall furnish the said H. N. Ells with a crossing, placed where most convenient, and shall furnish, put up, and maintain a picket fence, seven feet high, with a base board from six inches to one

foot wide, the width between the strips or pickets not to exceed two and a half inches, and to build said fence on the said land when directed by the said H. N. Ells for a length of fifteen hundred feet. "In testimony, &c." The plaintiff also produced evidence tending to prove, that the fence named in the contract was erected around his vineyard on his land and paid for by the railroad company.

The defendant gave evidence tending to prove that part of the stock was not injured by the locomotive on the train ; that it would have taken about 1,200 feet of fencing to fence the road on both sides on plaintiff's land, and that plaintiff's horses could not have gotten on the road if the bars had not been taken away from where they were first erected.

The court, at the close of the evidence, instructed the jury as follows :

"The jury are instructed, that plaintiff was not bound to keep his stock in an inclosure, and if while they were not confined they wandered on the railroad and were killed or injured by defendant's locomotive at a point where there was no sufficient fence and no crossing of a public highway, or at a point not within the corporate limits of the City of Boonville, which had not been by the corporate authorities laid out into lots, streets, alleys or squares, then the jury will find for the plaintiff."

"The jury is instructed that there is no evidence in this case that the plaintiff was, by contract with defendant, bound to build on his land or the land of the defendant, a fence along the line or parallell with the line of the Osage Valley and Southern Kansas Railroad, in the place of the fence which the defendant was bound by law to build on both sides of said road, where said road passed through or along and adjoining enclosed or cultivated fields, and no public highway crossed." There were several other instructions given on the part of plaintiff and several given on the part of the defendant, which it is not necessary to set forth here. The court also refused several instructions asked for by the defendant, none of which, however, except one, is it necessary to set forth here in order to an understanding of the points growing

out of the record in this case. The instruction, on the refusal of which the defendant mainly seems to rely for a reversal of this case is as follows: No. 1. If the jury believe from the evidence, that the plaintiff agreed and contracted with the Osage Valley and Southern Kansas Railroad Company to build a fence along the line of said railroad and on the plaintiff's land, and failed and neglected to build said fence, and by reason of such neglect and failure on the part of the plaintiff, the stock described in the petition as belonging to plaintiff came upon the track of said road at a point where plaintff had agreed to fence, and was killed or injured by the engines and cars of defendant running on said road, they will find for defendant."

The jury found a verdict for the plaintiff. The defendant, in due time, filed its motion for a new trial which was overruled by the court, and the defendant appealed to this court. The defendant has saved several exceptions to the rulings of the court below, but it will not be requisite that we should examine more than a few of these in order to a proper determination of the case. The first objection urged by the defendant is, that the court erred in striking out part of his amended answer. The greater portion of the part of said answer stricken out seems to be so confusedly stated, that it would be difficult to see how the plaintiff could be connected with the matter stated, but at the conclusion of said part of the answer it is stated that said stock were trespassers, and said plaintiff was guilty of gross negligence in not removing said stock from said track, after he knew they were there and that the train was coming."

It does not appear how the matter thus stated had any connection with the previous part of the answer, and if it is intended to be a substantive and independent and affirmative answer it is not so stated and certainly has the merit of brevity. How the stock were trespassers and what that fact had to do with the plaintiff's neglect to remove the stock from the track, does not appear. No facts are stated sufficient to constitute a defense, and the court properly struck that part of the answer out.

It is not doubted that the defendant may show that the stock sued for were killed by the fault of the plaintiff, but when such defense is attempted by answer, the facts must be set up constituting the defense.

The next objection urged by the defendant is, that the court refused to render judgment in favor of the defendant upon the replication filed to defendant's answer. The answer averred, that plaintiff had contracted to erect the fence along the railroad and had failed to do so, and that it was in consequence of his failure to erect the fence that the stock went upon the road. The replication to this part of the answer is as follows : "He denies that he was bound by any contract with the Osage Valley and Southern Kansas Railroad Company to build a fence on his own land on the line of said railroad track, as stated by defendant in his answer, and denies that plaintiff's stock came on said railroad track by reason of plaintiff not building a fence that he was bound to build by reason of any contract that he had made."

It is insisted that this replication only denies a conclusion of law and is not a specific denial of the facts stated in the answer. It is true that the replication might be construed to be a negative pregnant, and while it denied the execution of a contract which bound him to fence the road, it impliedly admitted that some kind of contract had been made. I think, under our liberal practice, where a contract is collaterally set up in pleadings, a denial of this kind is sufficient to require the defendant to produce it on the trial, so that its terms can be construed by the court. It may be said, that some contract was admitted to have been made to build a fence, but not a contract to fence the road.

It is next objected that the court improperly instructed the jury that there was no evidence tending to prove that the plaintiff had contracted to fence the road, and improperly refused the instruction asked for on the subject of the contract by the defendant. The court committed no error in giving the one or refusing the other of these instructions. There is no question but that the instruction asked by the defend-

ant is abstract law; that was decided by this court, when this case was formerly before it. But the contracts are now offered in evidence and they have not the slighest tendency to show that plaintiff undertook to fence the railroad. It was upon this express ground, that the one instruction was given and the other refused by the court. And the question as to the sufficiency of the evidence was neither made or decided when the case was here before. The contracts when read together (and they both only constituted one so far as the building of the fence is concerned,) only show that in consideration that plaintiff had relinquished the right of way, the railroad company agreed to build him 1500 feet of fencing, and that afterwards they employed plaintiff to put up the fence and agreed to pay him for it. The fence was to be erected for the plaintiff on his land and not for the company, and there was nothing which tended to prove that plaintiff undertook to fence the road.

It is further insisted by the defendant that where a farm crossing is left for the accommodation of an adjoining proprietor on the side of a railroad, and a gate or bars are put in the fence which incloses the road for the convenience of the proprietor, and the proprietor himself destroys the fence, or leaves open the bars, by reason of which his stock is killed, neither the proprietor nor his tenants, nor those claiming under him can recover of the railroad where stock escape on the road from that cause; and an instruction is asked and refused by the court to that effect, and also to the effect that if stock of another should trespass in the fields of such proprietor, and go from thence on to the railroad, and be injured, the company would not be liable. A great number of authorities are cited to sustain these views. There is no question but that the defendant is mainly right in these positions, but there is not a particle of evidence in the record to show that there was any crossing where the stock got on the road, nor that the horses were trespassing on any body's land, or that they were wrongfully on the land of Sandrock. Sandrock had a private wagon alley from the open street to

his house, this alley was open, it was not unlawful for plaintiff's horses to be running at large. They passed through this open alley, to the open ground along the railroad, without trespassing on any one, and went on to the road and were injured. The law insisted on is therefore not applicable to this case. The road was fenced on the side of this alley next the road up to Sandrock's house. If this fence had been extended east along the road, the accident could not have occurred. There were several other points made and argued in the brief of defendant in this case, but with the view we take of it, they are not applicable to the pleadings or facts in the case, and will not here be further noticed. Judge Wagner and Sherwood absent.

The other judges concurring, the judgment is affirmed.